## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT ANDREW MCMAHON, JR., | : | CIVIL NO.: 1:20-CV-01320 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

### I. Introduction.

Scott Andrew McMahon, Jr. ("McMahon") seeks judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying his

claims for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act.  We have jurisdiction

under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, we

---

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

will vacate the Commissioner's decision and remand the case to the Commissioner

for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1 to

13-12.*[2]  On July 19, 2017, McMahon protectively filed[3] a Title II application for

DIB. *Admin. Tr.* at 27.  He also protectively filed a Title XVI application for SSI

on June 27, 2017. *Id.*  In both applications, McMahon alleged a disability

beginning December 25, 2015. *Id.*  The relevant period for McMahon's DIB claim

is December 25, 2015 (his alleged onset date) through December 31, 2016 (his date

last insured). *Id*. at 32.  The relevant period for his SSI claim is June 27, 2017 (his

application date) through April 15, 2019 (the ALJ's decision). *Id.* at 32, 37.  After

both claims were initially denied, McMahon requested a hearing, which was held

on March 18, 2019. *Id.* at 27.

On April 15, 2019, Administrative Law Judge Daniel Balutis ("ALJ")

determined that McMahon was not disabled within the meaning of the Social

---

[2] The facts of the case are well known to the parties and will not be repeated here.  Instead, we will recite only those facts that bear on McMahon's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

Security Act.  Specifically, the ALJ denied McMahon's DIB claim at step two concluding that McMahon did not have a severe impairment through the date last insured, December 31, 2016. *Id.* at 32.  And the ALJ denied McMahon's SSI claim at step five. *Id.* at 36–37.  In sum, that ALJ concluded that McMahon had not been under a disability from the alleged onset date of December 25, 2015, through the date of his decision, April 15, 2019. *Id.* at 37.  And so, he denied him all benefits. *Id.*  McMahon appealed the ALJ's decision to the Appeals Council, which denied his request for review on May 27, 2020. *Id.* at 1.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this court.

On July 30, 2020, McMahon began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence. *Doc. 1* at 3.  McMahon requests that this court find that he is entitled to benefits or remand the case for a further hearing. *Id.*  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 12-13.*  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 17.*  The parties then filed briefs, *see docs. 20, 21,* and this matter is ripe for decision.

### III. Legal Standards.

#### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether McMahon is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  SSI "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that McMahon met the insured-status requirements through December 31, 2016. *Admin. Tr.* at 27.

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional

capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive

requisites.  Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642

F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson

v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or

simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision Denying McMahon's Claims.

On April 15, 2019, the ALJ denied McMahon's claims for benefits. *Admin.

Tr.* at 37.  At step one of the sequential-evaluation process, the ALJ found that

McMahon had not engaged in substantial gainful activity since December 25,

2015, the alleged onset date. *Id*. at 29.

At step two of the sequential-evaluation process, the ALJ found that as of

the date last insured, McMahon had the following medically determinable

8

impairments:  obesity, asthma, esophageal reflux, and myopia. *Id.* at 29.  But finding those impairment not to be severe, the ALJ denied McMahon's DIB claim at step two. *Id.* at 32.  With regarding to McMahon's SSI claim, the ALJ found that McMahon had the following severe impairments: scoliosis and degenerative disc disease of the lumbar spine. *Id.* at 32.  Thus, the ALJ proceeded to the subsequent steps of the sequential-evaluation process only as to McMahon's SSI claim.

At step three of the sequential-evaluation process, the ALJ found that McMahon did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*  Specifically, the ALJ discussed Listing 1.04, and he concluded that "[t]he record does not establish that the claimant has compression of a nerve root (including the caudal equine) or the spinal cord." *Id.*  The ALJ also noted that "[d]iagnostic testing of the lumbar spine did not show canal and neural foraminal stenosis of any kind[,]" and that "there is no evidence to establish spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, established by appropriate findings and resulting in the inability to ambulate effectively as defined in the listings." *Id.*

The ALJ then determined that McMahon has the RFC to perform light work[5] with some limitations. *Id.*  The ALJ found that McMahon must never climb ladders, ropes, or scaffolds. *Id.*  He limited McMahon to only occasional climbing ramps and stairs, balancing, kneeling, crouching, stooping, and crawling. *Id.* at 33. Furthermore, the ALJ stated that McMahon could have frequent exposure to dust, odors, fumes, and pulmonary irritants. *Id.*  In making this RFC assessment, the ALJ considered McMahon's symptoms that could be accepted as consistent with the record evidence, the medical opinions, and the prior administrative medical findings. *Id.*

At step four of the sequential-evaluation process, the ALJ found that McMahon had no past relevant work. *Id.* at 36.

At step five of the sequential-evaluation process, considering McMahon's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—information clerk, mail sorter, and

---

[5] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

photocopy machine clerk—that exist in significant numbers in the national economy that McMahon could perform. *Id.*

In sum, the ALJ concluded that McMahon was not disabled from December 25, 2015, through the date of his decision on April 15, 2019. *Id.* at 37.  Thus, the ALJ denied McMahon's applications for benefits. *Id.*

## V.  Discussion.

### A.  The ALJ's RFC assessment is not supported by substantial evidence.

One of McMahon's claims is that the ALJ should have included additional limitations in the hypothetical questions he presented to the VE. *Doc. 20* at 11.  In his view, the ALJ's failure to consider his asthma as a severe impairment contributed to error in the ALJ's hypotheticals. *Id.* at 12.  The hypotheticals, McMahon contends, included an assumption of frequent exposure to dust, odor, fumes, and pulmonary irritants, all which McMahon should avoid due to his asthma. *Id.*

A vocational expert's testimony is not substantial evidence if the ALJ did not include in the hypothetical to the vocational expert all the claimant's credibly established impairments:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative

> employment may only be considered for purposes of
> determining disability if the question accurately portrays the
> claimant's individual physical and mental impairments."
> *Podedworny*, 745 F.2d at 218.  A hypothetical question posed to
> a vocational expert "must reflect *all* of a claimant's
> impairments." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d
> Cir.1987) (emphasis added).  Where there exists in the record
> medically undisputed evidence of specific impairments not
> included in a hypothetical question to a vocational expert, the
> expert's response is not considered substantial evidence.
> *Podedworny,* 745 F.2d at 218 (citing *Wallace v. Secretary of
> Health & Human Servs.,* 722 F.2d 1150, 1155 (3d Cir.1983)).

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  But an ALJ is not required

"to submit to the vocational expert every impairment *alleged* by a claimant."

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (italics in original).

Rather, "the ALJ must accurately convey to the vocational expert all of a

claimant's *credibly established limitations.*" *Id*. (italics in original) (citation and

footnote omitted).

"[O]bjections to the adequacy of hypothetical questions posed to a

vocational expert often boil down to attacks on the RFC assessment itself." *Id*. at

554 n.8.  A claimant may claim that the ALJ erred by relying on the testimony of

the vocational expert "because the ALJ failed to convey limitations to the

vocational expert that were properly identified in the RFC assessment." *Id*.  Or a

claimant may claim that the ALJ erred by relying on the testimony of the

vocational expert "because the ALJ failed to recognize credibly established

limitations during the RFC assessment and so did not convey those limitations to

the vocational expert." *Id*.  "Challenges of the latter variety . . . are really best understood as challenges to the RFC assessment itself." *Id*.  Here, McMahon is claiming that the ALJ erred by including in his RFC assessment that he could have frequent exposure to dust, odors, fumes, and pulmonary irritants even though he has asthma and then asking the vocational expert to assume that the hypothetical individual about which she was asked could have frequent exposure to such irritants.  Thus, McMahon's challenge is really a challenge to the RFC.[6]

### 1.  Standards Regarding the RFC Assessment.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1); *see also* 20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186

---

[6] This is how the Commissioner construed McMahon's argument. *See doc. 21* at 15 n.6.

F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns*, 312 F.3d at 129 ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017).  And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D.

Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Further, in assessing any medical opinion and setting the RFC, the ALJ must clearly articulate his or her reasoning.  In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

**2.  The ALJ failed to adequately explain why he included in the RFC that McMahon could have frequent exposure to dust, odors, fumes, and pulmonary irritants.**

Here, the ALJ found that McMahon had asthma but that his asthma was not severe, noting that it was controlled with medication.  Nevertheless, when assessing the RFC, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Yet the ALJ concluded that McMahon could have frequent exposure to dust, odors, fumes, and pulmonary irritants.  He did not explain why someone with asthma, even asthma that is not severe and is controlled with medication, could have frequent exposure to such irritants.  And the ALJ's failure to provide an explanation is even more problematic given that there is a medical opinion that specifically says McMahon may never be exposed to such irritants.

Dr. Kneifati, the consultative examiner, provided a medical source statement as to McMahon's limitations regarding physical work-related activities. *Admin. Tr.* at 577-585.  He opined, among other things, that McMahon could never tolerate exposure to "[d]ust, odors, fumes and pulmonary irritants." *Id*. at 581.  The ALJ found Dr. Kneifati's opinion somewhat persuasive in parts and not persuasive in other parts:

> As for medical opinion(s) and prior administrative medical finding(s), the opinion of Dr. Kneifati, the consultative

16

examiner, which found the claimant was capable of lifting and carrying 20 and 50 pounds occasionally and ten pounds frequently, but would be limited to two hours of walking, three hours of standing and five hours of sitting in an eight-hour workday.  Dr. Kneifati reduced the claimant to occasional use of the right foot and frequent use of the left foot, occasional posture activities and to avoid pulmonary irritants.  This opinion was somewhat persuasive in that the limits to lifting and carrying, postural activities and environmental conditions are supported by the lack of any clinical findings or impairment affecting the use of the upper extremities balanced out with the minimal defects on the diagnostic testing of the lower spine combined with consideration of the claimant's nonsevere impairments, including asthma and obesity.  However, the remainder of this opinion was not persuasive because the degree of limitation is not supported by objective evidence.  Specifically, the diagnostic testing did not show significant scoliosis or degenerative changes and the clinical findings noted a normal gait and full muscle strength.  Further, this degree of limitation is simply not consistent with the level of treatment, which has been primarily through muscle relaxant medication from a primary care doctor, as opposed to any formal therapy, pain management or referral for a consultation with an orthopedic or neurological specialist.  In regard to these limitations, they appear to be largely based on subjective reports rather than clinical evidence.

*Admin. Tr.* at 35 (citation to the record omitted).  But the ALJ's reasoning (if there is any) as to Dr. Kneifati's opinion that McMahon could never tolerate exposure to dust, odors, fumes, and pulmonary irritants is incomprehensible.  The ALJ did not explain why he rejected Dr. Kneifati's opinion that McMahon could never tolerate exposure to dust, odors, fumes, and pulmonary irritants and instead concluded that McMahon could have frequent exposure to dust, odors, fumes, and pulmonary

irritants.  In sum, the ALJ's rationale for rejecting Kneifati's opinion in this regard is too opaque to permit meaningful judicial review.

Further, the ALJ's failure to articulate a proper basis for rejecting Dr. Kneifati's opinion that McMahon could never tolerate exposure to dust, odors, fumes, and pulmonary irritants influenced his RFC assessment.  As set forth above, although Dr. Kneifati opined that McMahon could never tolerate exposure to dust, odors, fumes, and pulmonary irritants, the ALJ concluded, without citation to any other medical evidence, that McMahon could have frequent exposure to dust, odors, fumes, and pulmonary irritants.  The gulf between never (Dr. Kneifati's opinion) and frequent (the ALJ's conclusion) cannot be bridged without an explanation, which the ALJ did not provide.[7]  Thus, we cannot say that substantial evidence supports the ALJ's RFC assessment.

---

[7] The Commissioner's reasoning in its brief is similarly unintelligible.  Apart from concluding that the RFC captured all McMahon's credibly established limitations, *doc. 21* at 16, when discussing the ALJ's RFC assessment, the Commissioner states: "Plaintiff could also have frequent exposure to dust, odors, fume[s] and pulmonary irritants, to account for his asthma," *doc. 21* at 14.  But how does frequent exposure to dust, odor, fumes, and pulmonary irritants account for someone's asthma?  The Commissioner does not explain. We also note that the Commissioner suggests that any error by the ALJ in not including further postural limitations in the RFC was harmless given that the jobs identified do not require climbing, balancing, stooping, kneeling, crouching, or crawling. *Doc. 21* at 17.  But the Commissioner makes no such argument regarding exposure to dust, odors, fumes, and pulmonary irritants.

**B.  Other Claims.**

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's failure to articulate why he rejected Dr. Kneifati's opinion that McMahon could never tolerate exposure to dust, odors, fumes, and pulmonary irritants and instead concluded that McMahon could have frequent exposure to dust, odors, fumes, and pulmonary irritants, we will not address McMahon's remaining claims of error.  "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id*.

**C.  Remand is the appropriate remedy.**

Because the ALJ's decision is not support by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to McMahon, as he requests. *See doc. 1* at 3 (requesting that benefits be awarded, or, in the alternative, the case be remanded to the Commissioner).  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully

developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of McMahon's claims, and we cannot say that substantial evidence on the record as a whole shows that McMahon is disabled and entitled to benefits.  Thus, we will remand the case to the Commissioner for further proceedings.

## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge